2023 IL App (1st) 221456-U

SIXTH DIVISION
December 15, 2023

No. 1-22-1456

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 94 CR 29937 |
| | ) | |
| | ) | |
| EFRAIN MORALES, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Justice Oden Johnson concurred in the judgment.
Justice Hyman specially concurred.

**ORDER**

¶ 1    *Held*:   The circuit court properly denied petitioner leave to file his fourth successive *pro se* postconviction petition.

¶ 2    Efrain Morales appeals from an order of the circuit court denying him leave to file his fourth successive *pro se* postconviction petition. Morales argues that he established the necessary cause and prejudice to be granted leave to file his petition, wherein he made a

proportionate penalties challenge to his sentence. For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 3                                BACKGROUND

¶ 4      In 1994, Morales was charged with the first-degree murder of Billy Bradford and the attempted first-degree murders and aggravated batteries of Charles Crawford and Jose Nevarro. At a 1996 jury trial, the State presented evidence that on the night of October 24, 1994, Bradford, Crawford, and Nevarro were working on a car in front of Bradford's house when a group of men, including two men later identified as Morales and codefendant Mario Gonzalez, approached and fired guns. Bradford was fatally wounded. Crawford testified that he was shot in the knee, fell to the ground, and hit his face on the concrete. Crawford was admitted to the hospital for "a couple of days," where doctors removed a 9-millimeter bullet from his leg. Nevarro testified that when he was shot, the bullet entered the back of his leg and came out the left front of his kneecap. At the hospital, the bullet wound was cleaned and Nevarro was given crutches. The jury found Morales guilty of the first-degree murder of Bradford and the attempted first-degree murders and aggravated batteries of Crawford and Nevarro.

¶ 5      At sentencing, the State presented testimony in aggravation of two separate shootings by Morales that did not result in convictions. The trial court reviewed the facts of the case and indicated that an extended-term sentence was not permissible under the law but that Morales was "not capable of being rehabilitated." It then sentenced Morales to 60 years for first degree murder and a consecutive term of 30 years for attempted murder, for a total of 90 years' imprisonment.

¶ 6      Morales appealed and argued: (1) a jury instruction error; and (2) ineffective assistance of trial counsel. We rejected those claims and affirmed Morales's conviction. *People v. Morales*, No. 1-96-2582 (1997) (unpublished order under Supreme Court Rule 23).

¶ 7      In 1998, Morales filed his first postconviction petition, claiming ineffective assistance of trial counsel based on reasons different from those raised on direct appeal. Morales was represented by counsel and the court allowed counsel to make an argument on the record. The court then summarily dismissed the petition. Morales appealed and argued that: (1) the trial court did not issue a proper written order; (2) he received ineffective assistance of trial counsel; and (3) he had new evidence that a State witness had lied at trial. We affirmed the trial court's summary dismissal of the first postconviction petition. *People v. Morales*, No. 1–98–2749 (1999) (unpublished order under Supreme Court Rule 23).

¶ 8      In 2001, Morales filed a *pro se* successive petition alleging 11 violations of his constitutional rights: (1) his first postconviction petition stated meritorious claims and was wrongfully dismissed; (2) he suffered ineffective assistance of appellate counsel on his first postconviction petition and his appeal of its denial; (3) prosecutors withheld evidence favorable to his defense; (4) his consecutive sentences were unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (5) his sentences were unfairly disparate from those of his codefendant; (6) the State presented perjured testimony by the codefendant victims, Morales's girlfriend Katrina Scimone, and the medical examiner; (7) newly discovered evidence identified in his attached affidavits proved his innocence; (8) the photo array in which he was identified was impermissibly suggestive; (9) ineffective assistance of trial counsel; (10) ineffective assistance of appellate counsel on direct appeal; and (11) the evidence did not support his

convictions. The trial court denied Morales leave to file the petition and we affirmed. *People v. Morales*, No. 1-01-4028 (2003) (unpublished order pursuant to Supreme Court Rule 23).

¶ 13    On July 8, 2015, Morales sought leave to file a *pro se* second successive postconviction arguing that the trial court erred in imposing consecutive sentences. The trial court denied Morales leave to file and we affirmed. *People v. Morales*, 2018 IL App (1st) 153347-U. In 2019, Morales sought leave to file a third *pro se* successive postconviction petition, again raising the same consecutive sentencing claim. The trial court denied Morales leave to file. We affirmed, granting appellate counsel's motion to withdraw because the appeal had no merit. *People v. Morales*, No. 1-20-0991 (Dec. 30, 2021) (summary order).

¶ 14    In 2021, Morales sought leave to file a fourth *pro se* successive postconviction petition. For the first time, Morales argued that his 90-year sentence is unconstitutional under the eighth amendment and the Illinois Constitution's proportionate penalties clause because (1) it is a *de facto* life sentence; (2) at the time of the offenses he was 22 years old, an "emerging adult" with childlike cognitive abilities exacerbated by substance abuse and childhood neglect; and (3) the sentencing court neither considered those factors in concluding that he was beyond rehabilitation, nor made a finding of "irretrievable depravity" as required by law. Morales explained that he did not raise this issue in any of his earlier postconviction petitions because his claim rested on "very recent Illinois decisions confirming the meritorious nature of [his] as[-]applied challenge, and new research in developmental psychology, neurology, and social science demonstrating that, like juveniles, the brains of emerging adults do not fully develope [sic] until their mid-twenties." Morales also attached various educational certificates that he earned while in prison to his petition.

¶ 15     The trial court denied Morales's motion for leave to file finding that he could not show cause for his failure to raise the proportionate penalties claim earlier because the foundation on which it rested, *Miller v. Alabama*, 567 U.S. 460 (2012), was available when he initiated prior litigation.  The court also determined that Morales could not establish the necessary prejudice because Morales was 22 years old when he committed the offenses in this case and was neither a juvenile nor a young adult to which *Miller*-related jurisprudence applied under the proportionate penalties clause. The court further found that Morales had not submitted proof showing that, despite his age, he suffered from mental health issues that reduced his culpability to childlike levels, as had the 22-year-old in *People v. Savage*, 2020 IL App (1st) 173135 (cited favorably by Morales in his filings), who challenged his 85-year sentence under the same theory.

¶ 16     It is from this judgment that Morales now appeals.

¶ 17                                    ANALYSIS

¶ 18     Morales argues that the circuit court erred when it denied him leave to file his fourth *pro se* successive postconviction petition wherein he established the necessary cause and prejudice with regard to his claim that his 90-year sentence violates the proportionate penalties clause of the Illinois Constitution.  Morales has abandoned his eighth amendment argument and therefore we will not consider it.

¶ 19     Under the Illinois Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), a petitioner may raise claims that his conviction or sentence violates the United States or Illinois Constitutions. *People v. Edwards*, 2012 IL 111711, ¶ 21.  Only a single postconviction proceeding is contemplated under the Act.  *Id*. ¶ 22.  Issues not raised in an initial petition are waived and the bar to successive petitions is relaxed only where the petitioner can establish

"cause and prejudice" for failing to raise the claim earlier or where there has been a "fundamental miscarriage of justice" based on actual innocence. Under the cause-and-prejudice test, a petitioner must show both (1) cause for his or her failure to raise the claim in an earlier proceeding and (2) prejudice stemming from his or her failure to do so. *Id.* (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)).

¶ 20    The proportionate penalties clause of the Illinois Constitution states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the defendant to useful citizenship." Ill. Const. 1970, art. I, § 11. Our supreme court has held that the "limitation on penalties" in this clause "goes beyond the framers' understanding of the eighth amendment and is not synonymous with that provision." *People v. Clemons*, 2012 IL 107821, ¶ 40. For a petitioner to succeed in a proportionate penalty claim, he must first demonstrate that the penalty is degrading, cruel or "so wholly disproportionate to the offense that it shocks the moral sense of the community." *People v. Klepper*, 234 Ill. 2d 337, 348-49 (2009).

¶ 21    Morales's proportionate penalties challenge is predicated on the holding in *Miller v. Alabama*, 567 U.S. 460 (2012). In *Miller*, the Supreme Court held that a sentence of mandatory life without the possibility of parole for those under the age of 18 at the time of their crimes violates the eighth amendment's prohibition against cruel and unusual punishment. *Id.* at 489; Cf. *People v. Harris*, 2018 IL 121932, ¶ 61 (18 marks the line between juveniles and adults for sentencing purposes and therefore the 23-year-old petitioner's eight amendment challenge to his sentence under *Miller* failed). The Illinois supreme court has subsequently held that, where an offender is younger than 18 years old, the trial court must consider certain factors before imposing a life sentence, including: his age and evidence of his "particular immaturity;" his

family and home environment; his degree of participation in the homicide and any family or peer pressure; his incompetence; and his rehabilitative potential. *People v. Savage*, 2020 IL App (1st) 173135, ¶ 58 (citing *People v. Holman*, 2017 IL 120655, ¶ 46). *Miller* applies retroactively to cases on collateral review. *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016).

¶ 22    We find that Morales has failed to establish the cause necessary for leave to file his fourth successive *pro se* postconviction petition. Our supreme court has specifically held that, "*Miller's* announcement of a new substantive rule under the eighth amendment does not provide cause for a [juvenile offender] to raise a claim under the proportionate penalties clause." *People v. Clark*, 2023 IL 127273, ¶ 61 (quoting *People v. Dorsey*, 2021 IL 123010, ¶ 74); see also *People v. Moore*, 2023 IL 126461, ¶40. "Long before *Miller*, Illinois law recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause." (Internal quotation marks omitted.) *Id.* ¶ 41. Therefore, the essential legal tools necessary to raise his present proposed claim under the proportionate penalties clause were present at the time Morales filed his previous postconviction petitions. *Moore*, 2023 IL 126461, ¶¶ 40, 42. Consequently, Morales did not, and cannot, satisfy the cause requirement necessary for leave to file his fourth successive postconviction petition. Having found Morales failed to establish cause for failing to raise his claim in the current petition sooner, we decline to address the question of whether Morales established prejudice. *People v. Walker*, 2022 IL App (1st) 201151, ¶ 31 (citing *People v. Brown*, 225 Ill. 2d 188, 207 (2007) (where defendant has failed to establish cause, it is not necessary for the court to consider prejudice). The trial court properly denied Morales leave to file his successive postconviction petition.

¶ 23    Morales attempts to circumvent *Clark, Dorsey and Moore* by arguing that he could not

have realistically raised his current proportionate penalties claim until this court decided *People v. Savage*, 2020 IL App (1st) 173135, *abrogated by People v. Hilliard*, 2023 IL 128186. Morales argues that before *Savage*, "no Illinois defendant aged 22 years or older at the time of the offense had been allowed to challenge his *de facto* life sentence under the Illinois Proportionate Penalties Clause beyond the initial stage of post-conviction proceedings." Consequently, when Morales last filed a successive petition in April 2019, there was no legal authority that would support a claim that his sentence was unconstitutional under *Miller*. According to Morales, that changed after *Savage*, wherein this court recognized that a 22-year-old sentenced to 85 years in prison for murder and attempt murder had raised a non-frivolous claim that his sentence violated the proportionate penalties clause because his long history of addiction demonstrated that he was more like a juvenile at the time of the offense. *Savage*, 2020 IL App (1st) 173135. Therefore, *Savage* provides cause to challenge the constitutionality of his sentence under the proportionate penalties clause in a successive postconviction petition. Morales urges that as his challenge is not based on *Miller*, and instead based on *Savage*, the holdings in *Clark, Dorsey* and *Moore* are not applicable in this case.

¶ 24    In *Savage*, the petitioner, who was 22 years old at the time he committed first degree murder, was sentenced to 85 years. *Id*. ¶ 2. In his initial postconviction petition, Savage challenged his sentence under both the eighth amendment and the proportionate penalties clause arguing that he should be afforded *Miller* protections because his drug addiction from the age of nine made him the functional equivalent of a "younger man," that he was using drugs every day at the time of the offense, and that he was attempting to rob a drug house at the time of the murder. *Id*. ¶ 71.  The circuit court denied the petition at the first stage.  *Id*.

¶ 25    We found that although Savage was seven months past his 21st birthday at the time of the offense, Savage's allegations were supported by detailed hospital records and the presentence investigation report. *Id.* ¶ 72. We also observed that the record failed to disclose whether the sentencing court considered the "attributes of young adulthood *** in light of defendant's lifelong drug addiction." *Id.* ¶ 74. We concluded that Savage's allegations, taken as true, could not be considered frivolous or patently without merit and advanced his petition to the second stage. *Id*. ¶¶ 76, 80.

¶ 26    Morales argues that the same conclusion is warranted here because he was also 22 at the time of the offense, was convicted of the same offense as Savage, was sentenced to almost the same *de facto* life sentence, was born into gang life, and also struggled with addiction. Morales argues that because *Savage* had not been decided when he filed his prior four postconviction petitions, *Savage* provides the necessary cause and therefore this court should grant him leave to file his fourth successive *pro se* petition.

¶ 27    We find Morales's reliance on *Savage* to be misplaced. Morales relies on *Savage* because it is the only published decision that has extended *Miller* to a petitioner over the age of 21. See *People v. Buford*, 2023 IL App (1st) 201176, ¶ 47 (citing *People v. Guerrero*, 2022 IL App (1st) 210400, ¶ 29). But *Savage* does not provide an independent basis for Morales to challenge his sentence under the proportionate penalties clause. As discussed, the petitioner in *Savage* sought *Miller* protections and this court granted Savage relief finding that based on his particular background, Savage's request to have his youth and its attendant circumstances considered at sentencing was not frivolous and patently without merit. *Savage*, 2020 IL App (1st) 173135, ¶ 75. The reasoning on which *Miller* and *Savage* are based was available at the

9

time Morales filed his previous postconviction petitions. *Moore*, 2023 IL 126461, ¶¶ 40, 42.

¶ 28    Morales's argument suffers from other defects as well. *Savage* has been regarded as an outlier and has not been cited with approval by most Illinois courts. *Guerrero*, 2022 IL App (1st) 210400, ¶ 29. In addition, *Savage* does not support extending *Miller* protections to a 22-year-old because the holding was limited to the very specific facts of the case. Finally, Savage raised his claim in an initial *pro se* postconviction petition where the pleading requirements are lower, not his fourth successive postconviction petition as Morales does here. See *People v. Montanez*, 2022 IL App (1st) 191930, ¶ 61 (recognizing that the pleading requirements for successive postconviction petitions are higher than the pleading requirements for initial postconviction petitions).

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court denying Morales leave to file his fourth successive postconviction petition.

¶ 30                                    CONCLUSION

¶ 31    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 32    Affirmed.

¶ 33    JUSTICE HYMAN, specially concurring:

¶ 34    Recent caselaw from the Illinois Supreme Court compels us to affirm. But older caselaw from the Illinois Supreme Court calls into question the soundness of this result.

¶ 35    As I wrote in dissent before the Illinois Supreme Court bolted the courthouse doors to petitioners like Morales, "[s]ome constitutional claims—like *Miller* claims and cases expanding on it—are so novel that their legal bases are not reasonably available until a court makes them so." *People v. Mobley*, 2022 IL App (1st) 201255-U, ¶ 67 (Hyman, J., dissenting). In making that

statement, I took as my guide the Illinois Supreme's foundational case on "cause," *People v. Pitsonbarger*, 205 Ill. 2d 444, 461 (2002). Neither the proportionate penalties clause nor the eighth amendment has a fixed meaning. Petitioners raise, and courts analyze, claims under them through a historical prism and as a response to our evolving social values and norms that befit a maturing society. See *Miller v. Alabama*, 567 U.S. 460, 469 (2012); *People v. Buffer*, 2019 IL 122327, ¶ 40. Pointing to the mere existence of the proportionate penalties clause as providing cause for claims like Morales's distorts this solemn process.

¶ 36    It need not be this way. The Illinois Supreme Court may revisit its original understanding of "cause" and provide those like Morales with the procedural fairness they deserve.